UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTIN PFIEFFER,** | \| |
| **Plaintiff,** | \| |
| v. | \| Civil Action No. 20-2924 (RBW) |
| **DEPARTMENT OF ENERGY,** | \| |
| **Defendant.** | \| |

### DEFENDANT'S MOTION FOR RECONSIDERATION

Pursuant to Rule 54(b) or, alternatively, Rule 59(d) of Federal Rules of Civil Procedure, Defendant U.S. Department of Energy ("Defendant") respectfully moves the Court to reconsider its June 27, 2022, Memorandum Opinion and Order in this Freedom of Information Act ("FOIA") matter to avoid manifest injustice.[1] The Court should revisit and revise its Memorandum Opinion because it did not explain how (i) Plaintiff's five FOIA requests here pertain to his alleged PhD coursework of nuclear weapons history; and (ii) Plaintiff's income of approximately $1,800 per month, totaling $21,600 per annum, that he generates from his Patreon website was "marginal profit," not sufficient to categorize him as a commercial requester.

### BACKGROUND

For the sake of brevity, Defendant respectfully refers the Court and Plaintiff to the Memorandum Opinion for the factual and procedural background of this case. Only relevant facts are described herein to provide context to support Defendant's current Motion.

In all, Plaintiff, a purported Ph.D. student, submitted a total of five FOIA requests to the

---

[1] The Court's June 27, 2022, Memorandum Opinion and Order [ECF Nos. 17 & 18] is referred to as "Memorandum Opinion" and cited as "Mem. Op."

1

National Nuclear Security Administration ("NNSA"), requesting: (i) the Pu Aging report; (ii) records relating to the Nevada National Security Site's ("NNSS") mascot the "Green Reaper"; (iii) records relating to the NNSS's educational efforts at local schools; (iv) subagency reports for the 2017 NNSA Federal Employee Viewpoint Survey ("FEVS"); and (v) records relating to Projects Rumpler, Bayonet, Lek, and Sopwith.  *See* Mem. Op. at 3 (citing to the parties' Statements of Material Facts).  For each of these five requests, Plaintiff requested a fee waiver, asserting that he was an educational institution requester and a representative of the news media.  *Id.* at 4, *see also* Compl. ¶ 25; Prayer for Relief (seeking declaratory judgment that Plaintiff qualifies as a news media and educational institution requester for purposes of assessing processing fees associated with plaintiffs' FOIA requests submitted to NNSA).  As proof to support his educational institutional requester status, Plaintiff provided, among other things, a letter from his professor indicating that Plaintiff's dissertation research focuses on nuclear weapons history and government secrecy *See* ECF 8-4, at pp. 14, 39, 64 and 101(four copies of the same letter).  Plaintiff also told NNSA that he intended to place the requested records on his Patreon website, which generates approximately $1,800 income for him from paid subscribers.  See ECF 8-3 at ¶¶ 14, 18, 22, 26, 30, 33, and 37.  Plaintiff's Complaint also stated that he places the records on his Patreon website, which patrons pay a monthly fee to support.  Compl. ¶21.

    NNSA evaluated the intended use for each of Plaintiff's requests and made an independent determination as to the fee status for each request.  See ECF 8-3 at ¶¶ 14, 17-37.  NNSA ultimately determined that Plaintiff had a commercial interest in the records sought in each of his FOIA requests and, therefore, categorized him as a commercial requester.  See id. at ¶¶ 14, 16, 18, 22, 26, 30, 33, 35, 37, 38, and 39.  Plaintiff disagreed and filed this lawsuit.

The parties filed cross-motions for summary judgment and, on June 27, 2022, the Court denied Defendant's motion and granted Plaintiff's motion in part and denied it in part. See ECF No. 17 and 18. Specifically, the Court found that Plaintiff was entitled to a fee waiver for all Plaintiff's five FOIA requests because he qualified as an educational institution requester. Mem. Op. at 7-13. The Court further found that the records sought by Plaintiff were not for commercial purposes. Id. at 13-16. The Court, however, denied Plaintiff's motion to extent that it sought a declaratory judgment classifying him as at an educational institution requester for all future FOIA requests. Id. 13 n.6.

In the Order that accompanied the Memorandum Opinion, the Court did not specify whether it was a final appealable order and merely stated that it denied Defendant's motion for summary judgment entirely, and granted in part and denied in part Plaintiff's cross-motion for summary judgment. *See* ECF No. 18. Therefore, if the Order was an interlocutory one, Defendant seeks reconsideration under Rule 54(b). Alternatively, if the Court intended the Order to be a final one, Defendant seeks reconsideration under Rule 59(e). Under either Rule, as discussed below, the Court should revisit its Memorandum Opinion to prevent manifest injustice.

## LEGAL STANDARDS

Standard of Review - Fed. R. Civ. P. 54(b)

Rule 54(b) governs reconsideration of orders that do not constitute final judgments and provides that interlocutory orders "may be revised at any time before the entry of a judgment[.]" Fed. R. Civ. P. 54(b); see Am. Fed'n of Teachers, AFL-CIO v. Bullock, 605 F. Supp. 2d 251, 257 (D.D.C. 2009) (granting defendant's motion for reconsideration of prior denial of summary judgment under Rule 54(b)). "The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b): Unlike Rule 60(b) which contains a reasonableness provision, Rule 54(b) allows a court to reconsider its interlocutory decisions 'at any time' prior to a final

judgment." In Def. of Animals v. Nat'l Institutes of Health, 543 F. Supp. 2d 70, 75 (D. D.C. 2008); see also Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (noting Court has "broad discretion to grant or deny a motion for reconsideration."); Lewis v. United States, 290 F. Supp. 2d 1, 3 (D.D.C. 2003) (quoting Rule 54(b)).

Further, a court may reconsider an interlocutory decision "as justice requires." Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir.2011); Cobell, 355 F. Supp. at 539. Under this standard, reconsideration may be warranted where the court has "'patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred.'" Arias v. DynCorp, 856 F. Supp. 2d 46, 52 (D.D.C. 2012) (quoting Negley v. FBI, 825 F. Supp. 2d 58, 60 (D.D.C. 2011)). The burden to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied is on the moving party. Husayn v. Gates, 588 F. Supp. 2d 7, 10 (D.D.C. 2008); Animals, 543 F. Supp. 2d at 75.

Standard of Review – Fed. R. Civ. P. 59(e)

A Rule 59(e) motion should be granted to correct a clear error, whether of law or of fact, or to prevent a manifest injustice. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (stating that four grounds for reconsideration are to prevent manifest injustice, to account for an intervening change in controlling law or newly discovered evidence, or to correct a clear error of fact or law); EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997). So long as the Rule 59(e) motion is timely filed, courts have considerable discretion to grant or deny it. Lockheed Martin Corp., 116 F.3d at 112. Although courts are not required to consider new legal arguments or mere restatements of old facts or arguments, the Court can and should correct clear errors in

4

order to "preserve the integrity of the final judgment." Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 50 (D.D.C. 2002).

As explained below, under either Rule, Defendant respectfully submits that the Court should reconsider its Memorandum Opinion to avoid a manifest injustice. See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (district courts have broad discretion to grant motions for reconsideration of interlocutory orders under Rule 54(b) only as justice requires) (cleaned up); Firestone, 76 F.3d at 1208 (trial courts have wide discretion to grant Rule 59(e) motions for reconsideration, among other things, to correct a clear error or prevent manifest injustice).

## ARGUMENTS

**1. THE COURT DID NOT EXPLAIN HOW PLAINTIFF'S FIVE FOIA REQUESTS RELATE TO HIS SCHOLARLY RESEARCH**

The Memorandum Opinion noted that "the plaintiff's past categorizations can be considered when an agency is deciding whether the same categorization is applicable to a later request." Mem. Op. at 12 (cleaned up). The Court also correctly observed that "when reviewing FOIA fee waiver requests, agencies must make an independent fees status determination for each request." Mem. Op. at 11 (cleaned up) (citing Long v. U.S. Dep't of Homeland Security, 113 F. Supp. 3d 100, 105 (D.D.C. 2015). Based on this legal principle, the Court appropriately rejected Plaintiff's request for a declaratory judgment that he is entitled to a FOIA fee waiver for all future requests. Id. at 13 n.6. Even with these legal precepts in mind, the Memorandum Opinion nevertheless neglected to analyze each of Plaintiff's five FOIA requests separately to ascertain whether each request has a nexus to Plaintiff's scholarly research. In fact, the Memorandum Opinion broadly concluded that "the requested FOIA records are connected to [Plaintiff's]

scholarly research, and that the plaintiff therefore qualifies as an educational institution requester." Mem. Op. at 12-13. Without reconsideration, the Memorandum Opinion is legally contradictory.

Over Defendant's arguments otherwise, the Court found that Plaintiff's scholarly research relates to the anthropology and history of nuclear power. Mem. Op. at 10-11. Based on this factual finding, the Court "determined that the plaintiff did sufficiently show a nexus between the requested records and his scholarly intent for seeking the records." Id. at 15 (underlined in original). But nowhere in the Memorandum Opinion did the Court evaluate each of Plaintiff's five requests individually when determining Plaintiff's fee category.[2] Indeed, had the Memorandum Opinion faithfully observed the legal principles articulated on this issue, the Court would have found that at least three of Plaintiff's five FOIA requests do not appear to be related to Plaintiff's scholarly research on anthropology and history of nuclear power. For example, Plaintiff's second FOIA request sought records concerning "NNSS's mascot the Green Reaper." Mem. Op. at 3. This FOIA request sought "meeting minutes, emails, reports analyses and other records relating to the conceptualization, creation and appearances of [the agency's] mascot the Green Reaper." See ECF 8-4 at 26. It sought records on "the discussion that led to the idea that the NNSS needed a mascot as well as those that led to the Green Reaper being selected." Id. It is entirely unclear how the NNSS's records relating to its mascot - the "Green Reaper" - has any relation to Plaintiff's work on anthropology and history of nuclear power. Nor did the Memorandum Opinion shed any light on this relationship, as required under the FOIA jurisprudence.

---

[2] To be clear, Defendant did individually evaluate each of Plaintiff's five FOIA request to ascertain whether he qualified for a fee waiver and found that he did not. See Perez Declaration, ECF 8-3 at ¶¶17, 20, 24, 25, 28, 29, 31, 32 and 36. This finding led to Plaintiff filing this FOIA lawsuit.

Next, Plaintiff's third FOIA request sought NSSS's educational efforts, programs, and exhibits, in Elementary, Middle, and High School in Nevada and other states. Mem. Op. at 3. This particular FOIA request sought records relating meeting minutes, emails, reports, analyses, exhibit developmental reports, and plans, copies of exhibits and other records related to the agency educational efforts, programs and exhibits at Elementary, Middle and High Schools in Nevada and other states. See ECF 8-4, at 51. On their face, it is not clear how the records sought pertain to Plaintiff's work on anthropology and history of nuclear power. More importantly, the Memorandum Opinion neglected to analyze how these requested records are related to the Plaintiff's claimed areas of scholarly research. Plaintiff's fourth request demanded certain reports from the 2017 FEVS. Mem. Op. at 3 (cleaned up). Plaintiff sought records on the NNSA's 2017 FEVS first and second level subagency reports. See ECF 8-4, at p. 76. These records– which relate to employee job satisfaction – do not have any apparent nexus to anthropology and history of nuclear power. The Memorandum Opinion failed to explain whether such nexus even exists between the 2017 FEVS and Plaintiff's purported research areas.

The Court cited Sack v. U.S. Dep't of Def., 823 F.3d 687 (D.C. Cir. 2016) throughout the Memorandum Opinion to find that Plaintiff qualified for a fee waiver as an educational institution requester for Plaintiff's five FOIA requests. Sack required that students and professors must demonstrate a connection to their scholarly research to qualify for a waiver. Id. at 693. Indeed, the D.C. Circuit found that the requesting plaintiff had met this burden by showing that her FOIA requests for reports on polygraph examinations was related to the research of her dissertation on polygraph bias. Id. In reaching this conclusion, the D.C. Circuit offered an example where an educational institution (whether teacher or student) would not qualify for a fee waiver and explained that "[a] request from either a teacher or a student seeking information that would help

7

her write a murder mystery or enhance her personal stock portfolio presumably has no connection to the requester's role at an educational institution and would not justify reduced fees." Id. at 693. The D.C. Circuit's hypothetical suggests that, in addition to ascertaining whether a requester qualifies as an educational institution, the trial court must also determine that the subject FOIA request has some connection to the requester's work at the educational institution. Id. Here, the Memorandum Opinion accomplished that first task by finding that Plaintiff qualified as an educational institution (Mem. Op. at 8); however, the Memorandum Opinion stopped short and did not engage in the critical analysis to ascertain whether and how each of Plaintiff's five FOIA requests was related to Plaintiff's claimed scholarly research.  In fact, had the Memorandum Opinion applied the D.C. Circuit's hypothetical illustration to Plaintiff's second, third, and fourth FOIA requests, the Court would have to logically conclude that these three FOIA requests are akin to the irrelevant information described in the D.C. Circuit's example and bear no relationship to Plaintiff's claimed scholarly research on anthropology and history of nuclear power.

Finally, as noted above, Defendant did not find that Plaintiff's first FOIA request (which seeks the Pu Aging Report) and fifth FOIA request (which seeks records on the Projects Rumpler, Bayonet, Lek, and Sopwith) (see Mem. Op. at 3) were related to his scholarly research. See supra at n.2.  The Court's Memorandum Opinion rejected this position; however, it did not provide any specific analysis to explain why Defendant's view was incorrect.  Based on the law set forth in the Memorandum Opinion, the Court should revise this conclusion or, alternatively, clarify the bases for finding that Plaintiff's first and fifth FOIA requests relate to Plaintiff's scholarly research.

## II. THE COURT ERRED IN DETERMINING THAT PLAINTIFF'S INCOME OF $1,800 PER MONTH IS NOT SUFFICIENT TO SHOW HE IS A COMMERCIAL REQUESTER

The Memorandum Opinion noted that Plaintiff does acquire profits from his Patreon post; however, the Court was persuaded by Plaintiff's assurance that his "primary intention for the use of the records at issue is for scholarly purposes." Mem. Op. at 15 (citing Pl. MSJ at 20). The Court appropriately observed that the law recognized that profit alone is insufficient to render a requester's action primarily commercial so long as the requested records are in furtherance of the scholar's mission. Id. at 14 (citing Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 35–36 (D.C. Cir. 1998) and Long v. U.S. Dep't of Homeland Sec., 113 F. Supp. 3d 100 (D.D.C. 2015)). The Memorandum Opinion further noted that Plaintiff's potential profits through Patreon does not constitute a primarily commercial interest that outweighs Plaintiff's scholarly intent on posting the record for free public access. Mem. Op. at 15 (citing Consumers' Checkbook v. U.S. Dep't of Health & Hum. Servs., 502 F. Supp. 2d 79, 89 (D.D.C. 2007)). The Court ultimately concluded that "the potential **marginal profit** the plaintiff would acquire from his Patreon webpage . . . does not trump his scholarly intentions to utilize the records for his studies and his online dissemination of the records without cost to the public." Id. at 16 (bold added). The Court should revisit its Memorandum Opinion on this issue for two reasons.

First, the Memorandum Opinion does not cite a single authority to support the conclusion that Plaintiff's revenue of approximately $1,800 per month (which totals about $21,600 per year) is considered "marginal profit."[3] Indeed, the Memorandum Opinion fails to define what

---

[3] Plaintiff's Cross-Motion for Summary Judgment acknowledged that Defendant claimed that his Patreon website generated $1,800 per month but it did not dispute this fact. See Pl. MSJ at 17-18. See also Perez Decl. ECF 8-3 at ¶¶ 14, 18, 22, 26, 30, 33, and 37 (describing how Plaintiff generates approximately $1,800 per month on his Patreon website). Plaintiff merely argued that he also curated the requested records on his free and public online archive. Id. at 18.

constitutes "marginal profit" for purposes of determining whether a particular FOIA request was for primarily commercial functions. Defendant respectfully submits that the authorities cited in the Memorandum Opinion do not suggest that Plaintiff's $21,600 annual revenues constitute "marginal profit."

Second, the Memorandum Opinion casts aside Defendant's contentions that Plaintiff's five FOIA requests were intended for commercial purposes by noting that, so long as the requests are in furtherance of his scholarly research, the "quasi-commercial nature" of these requests is irrelevant. Mem. Op. 14 (internal citations omitted). Yet, as mentioned above, the Memorandum Opinion does not explain how Plaintiff's second FOIA request (agency's Green Reaper mascot), third FOIA request (educational efforts at local schools), and fourth FOIA request (2017 employee viewpoint survey) advance his scholarly research on the anthropology and history of nuclear power. Because there lacks an apparent nexus between these three FOIA requests and Plaintiff's scholarly research, the logical conclusion is that that Plaintiff sought the record for primarily commercial purposes and not in furtherance of any academic coursework. Similarly, the fact that the Memorandum Opinion does not describe with any particularity how Plaintiff's first and fifth FOIA requests pertain to his areas of research undermines further the Court's conclusion that Plaintiff's annual revenue of approximately $21,600 was merely "marginal profit." Given these facts, the Court should revise its Memorandum Opinion to hold that Plaintiff's five FOIA requests were intended for commercial reasons. Alternatively, Defendant respectfully requests that the Court clarify how each of Plaintiff's five FOIA requests – which no doubt will generate profits for Plaintiff – are related to his scholarly research, thus rendering these requests to be merely "quasi-commercial [in] nature."

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court revise its Memorandum Opinion to find that Plaintiff does not qualify for a fee waiver for his second, third and fourth FOIA requests in this case because they do not relate to his claimed scholarly work. The Court should also revise its ruling to clarify how (if at all) Plaintiff's first and fifth FOIA requests pertain to his areas of research. In addition, the Court should reassess its Memorandum Opinion to find that Plaintiff is a commercial requester because his revenues of approximately $21,600 per annum generated from the requested records from his five FOIA requests are not "marginal profit" by any objective standard. Finally, the Court should award judgment in Defendant's favor in this case.

Dated: July 25, 2022

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:     //s//
JOHN C. TRUONG
D.C. BAR #465901
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2524
Fax: (202) 252-2599
E-mail: John.Truong@usdoj.gov
Counsel for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTIN PFIEFFER,** | |
| **Plaintiff,** | |
| v. | Civil Action No. 20-2924 (RBW) |
| **DEPARTMENT OF ENERGY,** | |
| **Defendant.** | |

### [PROPOSED] ORDER

Upon consideration of Defendant's Motion for Reconsideration, Plaintiff's Opposition thereto, and the entire record herein, it is this _____ day of _____, 2022,

ORDERED that Defendant's Motion for Reconsideration is hereby GRANTED;

ORDERED that Plaintiff is not entitled to a fee waiver in this case; and it is

FURTHER ORDERED that judgment is entered in Defendant's favor entirely.

SO ORDERED.

_____
United States District Judge